**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Crowley Puerto Rico Services, Inc.; Crowley Caribbean Services, LLC<br><br>  Plaintiffs<br><br>    v.<br><br>Tire Kingdom; Infinity Investors, LLC; Nedal Salem;<br><br>  Defendants | CIVIL NO.:<br><br>IN ADMIRALTY/MARITIME; DECLARATORY JUDGMENT |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**TO THE HONORABLE COURT:**

The Plaintiffs, Crowley Puerto Rico Services, Inc. and Crowley Caribbean Services, LLC (collectively referred to as "Crowley"), through the undersigned attorneys, respectfully allege and pray as follows:

## I.   NATURE OF THE CASE

This case is filed for redress of a breach of a maritime contract and the wrongful actions and omissions by codefendants Tire Kingdom, Infinity Investors, LLC and Mr. Nedal Salem (collectively referred herein as "Codefendants"), against Crowley and for the issuance of declaratory relief pursuant to Title 28 U.S.C. §§ 2201-2202. As will be explained in more detail below, co-defendants have arbitrarily, capriciously and illegally persisted to wrongfully interpret the terms and conditions of the Settlement Agreement & Release executed between the parties in Civil No. 18-01708 (ADC) ("the Settlement Agreement"), refusing to pay outstanding charges owed to Crowley under the erroneous assumption that said outstanding charges were released

1

under the Settlement Agreement. A simple reading of the language of the Release, however, fully dispels Codefendants' erroneous stance. Crowley has attempted to reconcile the issue but has been unsuccessful, as Codefendants refuse to accept that the charges now being collected are completely independent to those that were part of the Settlement Agreement and Release. A justiciable controversy exists between the parties and given that there is no other process to exhaust, Crowley has no other remedy but to file the instant action seeking a determination from this Court that Codefendants' outstanding charges were not object of the Settlement Agreement and Release entered in Civil No 18-01708 (ADC) and that Codefendants have an obligation towards Crowley to pay the same.

## II.     JURISDICTION AND VENUE

1. Plaintiffs bring this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure.

2. This is an Admiralty and Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty Jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333.

3. Alternatively, this Honorable Court also has diversity jurisdiction pursuant to Title 28 U.S.C. § 1332(a)(1), since the amount of controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

4. Venue lies within the District of Puerto Rico inasmuch as a substantial part of the events or omissions that give rise to the instant Complaint occurred in this Judicial District. Thus, co-defendants' conduct results in actionable claims within this United States District Court for the District of Puerto Rico.

## III.   PARTIES

5. Plaintiff Crowley Puerto Rico Services, Inc. ("Crowley") is a corporation organized and existing under the laws of Delaware with its principal place of business in Jacksonville, Florida, and at all material times, was engaged in the business of carrying goods for hire on ocean-going vessels.

6. Plaintiff Crowley Caribbean Services, LLC ("Crowley") is a limited liability company organized and existing under the laws of the Cayman Islands with its principal place of business in Jacksonville, Florida, and at all material times, was engaged in the business of carrying goods for hire on ocean-going vessels.

7. Codefendant Tire Kingdom is an unincorporated entity whose members are citizens of St. Thomas, United States Virgin Islands. On or about November 4, 2015, Tire Kingdom entered into an International and U.S. Domestic Ocean Lines and Logistics Volume Contract ("Service Contract")[1] with Crowley (with effective duration from November 5, 2015 – November 30, 2018) for the ocean carriage of different commodities. Further, Tire Kingdom regularly conducts business with Crowley for the ocean carriage of different commodities. As it pertains to this Complaint, codefendant Tire Kingdom acted as the Shipper and/or Consignee of multiple

---

[1] Service Contracts are authorized under the Shipping Act of 1984, as amended, and are required to be filed confidentially with the U.S. Federal Maritime Commission. 46 USC §40502 (Service Contracts). Service Contracts are further defined under 46 C.F.R. § 530.3(q) as follows:

> Service contract means a written contract, other than a bill of lading or receipt, between one or more shippers and an individual ocean common carrier or an agreement between or among ocean common carriers in which the shipper makes a commitment to provide a certain minimum quantity or portion of its cargo or freight revenue over a fixed time period, and the individual ocean common carrier or the agreement commits to a certain rate or rate schedule and a defined service level, such as, assured space, transit time, port rotation, or similar service features. The contract may also specify provisions in the event of nonperformance on the part of any party.

3

containers and up to the filing of the instant Complaint has incurred in charges in the amount of $103,605.00 in connection to the same.

8.      Codefendant Infinity Investors, LLC ("Infinity Investors") is a purported corporation doing business in St. Thomas, United States Virgin Islands, whose members are citizens of said territory. Infinity Investors is listed as an "Affiliate" under the Service Contract with Crowley[2]. Further, Infinity Investors regularly conducts business with Crowley for the ocean carriage of different commodities. As it pertains to this Complaint, codefendant Infinity Investors acted as the Shipper and/or Consignee of several containers and up to the filing of the instant Complaint has incurred in charges in the amount of $34,100 in connection to the same. Codefendant Infinity Investors was also a named codefendant in the Underlying Claim Civil No. 18-01708 (ADC) and signatory to the Settlement Agreement and Release executed in said action, which is also object of the instant Complaint.

9.      Codefendant Mr. Nedal Salem ("Mr. Salem") is a natural person, citizen of St. Thomas, United States Virgin Islands who is listed as an Affiliate under the Service Contract. Codefendant Mr. Salem was also a named codefendant in the Underlying Claim Civil No. 18-

---

[2] The Court should note that although the Service Contract is signed by Tire Kingdom as "Shipper", Clause 5.3 and Annex B of said Contract lists amongst other Affiliates, Mr. Nedal Salem and Infinity Investors. "Affiliate" and "Shipper" are defined in the Part II Section 2 (Definitions) of the Service Contract as,

> '*Affiliate*' means two or more entities, which are under common ownership or control by reason of being a parent and subsidiary or entities associated, under common control with, or otherwise related to each other through common stock ownership or common directors or officers. Shipper acknowledges its continuing obligation to update carrier of any changes in the status of Shipper or any of its Affiliates.

> 'Shipper' means the party set forth in Section 3 of Part I (or its Affiliate) that is a cargo owner, the person for whose account the ocean transportation is provided, the person to whom delivery is to be made, a NVOCC or shippers' association.

As to the applicability of the Service Contract upon Affiliates, said Contract specifically establishes in its pertinent part that: "**The Shipper accepts such covenants, exceptions, limitations and liberties of this Contract on its own behalf and on behalf of any Affiliates**, the Consignee **or owner** or beneficial owner of the Goods and Shipper warrants to Carrier that Shipper has the authority to bind the Consignee or owner of the Goods to such extent." (*See*, Part II Clause 1, at page 3 of 12).

01708 (ADC) and signatory to the Settlement Agreement and Release executed in said action, which is also object of the instant Complaint.

### IV. FACTS RELATED TO THE UNDERLYING LAWSUIT AND THOSE LEADING TO THE FILING OF THE INSTANT COMPLAINT FOR DECLARATORY JUDGMENT

#### a. The instant demurrage claim was not part of the Settlement Agreement in the Underlying Suit.

10. On September 21, 2018, the appearing Plaintiff filed an *In Rem* and *In Personam* Verified Complaint against, defendant, *in rem*, 27 Containers of Hotel Furniture and, co-defendants, *in personam*, Mr. Nedal Salem, Furniture Outlet, and Infinity Investors, LLC. (*See* Civil No. 18-01708 (ADC), referred herein as the "Underlying Suit").[3]

11. The Underlying Suit was filed due to codefendants' failure to pay Crowley pending demurrage charges.[4]

12. As a result of the Underlying Suit, this Honorable Court ordered the issuance of the process of maritime arrest of the *in rem* defendant 27 Containers. (*See*, Docket No. 7, Civil No. 18-01708 (ADC)).

13. The codefendants in the Underlying Suit insisted on an expeditious Post Arrest Hearing and further insisted that the Court vacate the arrest of the *in rem* defendant 27 Containers. (*See*, Docket Nos. 20 and 34; Civil No. 18-01708 (ADC)).

---

[3] While codefendant Tire Kingdom was a party to the Service Contract, it was not a named defendant in the Underlying Suit.

[4] For a definition of demurrage in a container case, *see Gulf Puerto Rico Lines, Inc. v. Associated food Co., Inc.*, 366 F. Supp. 631, 638 (D.P.R. 1973) ("It is well recognized that demurrage is extended freight, that is, extended ocean freight charges, and that the risk of vicissitudes which prevent the loading or discharge of cargo within the stipulated lay days or free time allowed by tariffs, should be borne by the cargo interest, shipper or consignee, as the case may be. …. This absolute liability to pay demurrage as an incident to the contract of transportation by water, which is undoubtedly a maritime contract...".

14. After the benefit of holding the Post Arrest Hearing and reviewing/analyzing the parties' briefs in connection to said issue, the District Court issued an Opinion and Order denying codefendants' request to vacate the arrest. (*See*, Docket No. 49; Civil No. 18-01708 (ADC)).

15. After this occurred, Plaintiffs and codefendants to the Underlying Suit entered into the Settlement Agreement, dated January 10, 2019.

16. The Settlement Agreement included General Release clauses from the Plaintiffs to the codefendants in the Underlying Suit and vice versa.

17. These General Release clauses, however, are dissimilar, imposing different conditions as to Crowley and codefendants in the Underlying Suit.

18. The specific language of the Crowley's General Release to codefendants in the Underlying Suit provides as follows:

> 7. GENERAL RELEASE (PLAINTIFFS): Plaintiffs, on their own behalf, individually and collectively, and on behalf of their heirs, successors, assigns, agents, do freely and voluntarily, hereby forever release and discharge Defendants, its employees, agents, successors, assigns, insurers, attorneys, past and present, of and from any and all claims, demands, impositions, obligations, undertakings, controversies, actions, causes of actions, damages, liabilities and all other matters whatsoever of whatever kind or nature arising out of or relating to in any way the subject matter of the claim presented, whether in law or in equity, known or unknown, suspected or unsuspected, absolute or contingent that Plaintiffs have, or have ever had, before, up to, and including the date of this Agreement, against Defendants; it being the intention of the parties to forever and fully close this matter.

19. On the other hand, codefendants' General Release clause as to Crowley's claims explicitly provides the following:

> 5. GENERAL RELEASE (DEFENDANTS): Defendants, on their own behalf, individually and collectively, also including all of their Affiliates, related entities, members, officers, directors, agents, employees, successors, assigns, insurers, past and present, do freely and voluntarily, hereby
>
> forever release and discharge Plaintiffs, its employees, agents, successors, assigns, insurers, attorneys, past and present, of and from any and all pending or potential claims, cargo claims, demands, impositions, obligations, undertakings, controversies, actions, causes of actions, damages, liabilities, condition of the arrested cargo, consequential damages and all other matters whatsoever of whatever kind or nature arising out of or relating to in any way to any and all cargo claims presented (even those not subject of the Complaint and Counterclaim, including claims related to lost or damage cargo, lost vehicles and lost fuel tanks) and the subject matter of the counterclaim filed, whether in law or in equity, known or unknown, suspected or unsuspected, absolute or contingent that Defendants (or any of its Affiliates, related entities, members, officers, directors, agents, employees, successors, assigns or insurers) have, or have ever had, before, up to, and including the date of this Agreement, against Plaintiffs; it being the intention of the parties to forever and fully close this matter.

20. Simply put, Crowley's General Release clause towards codefendants **did not include** the release of "claims, demands, impositions, obligations, undertakings, controversies, actions, causes of action, damages, liabilities and all other matters whatsoever of whatever kind or nature" that were not presented in the Underlying Suit. Stated differently, Plaintiffs only released codefendants of the claims that were part of the Underlying Suit.

21. In addition to the above, most telling is that different from Crowley's General Release clause, codefendants' General Release clause specifically releases Crowley from other claims not subject or that were not included in the Underlying Suit.

22. In connection to this, said General Release clause specifically reads in its pertinent part as follows: "Defendants, on their own behalf, individually and collectively,…do freely and voluntarily, hereby forever release and discharge [Crowley] of and from any and all pending and

potential claims…(**even those not subject of the Complaint and Counterclaim, including claims related to lost or damage cargo, lost vehicles and lost fuel tanks**)…". (Emphasis added).

23. It is more than obvious then, that if Crowley intended to also release codefendants from claims that were not object of the Underlying Suit, it would have stated as such in the General Release clause of the Settlement Agreement, but it clearly did not do so.

24. Similarly, if codefendants wanted to be released of claims not object of the Underlying Suit, they could have also included said language in the Release clause. They, however, failed to do so, clearly waiving any right to make such a claim at this juncture.

25. Also very telling is that Tire Kingdom, one of the codefendants to the instant case, was not even a party to the Underlying Suit.

26. Hence, there is no way Tire Kingdom can validly attempt to argue that claims against it were released by way of the Settlement Agreement executed in the Underlying Suit, when said entity was not even a party to said suit nor to the Settlement Agreement.

**b. The outstanding demurrage.**

27. Entirely unrelated to the claims object of the Underlying Suit, codefendants Tire Kingdom and Infinity Investors requested that Crowley ship multiple containers consisting of tires and building materials.

28. The ocean transportation of these containers was made pursuant to the following Bills of Lading[5]:

| COSS8M212496 | STTN6M000107 | STTN8M000525 |
| JAXS7M185659 | STTN6M000169 | JAXS8M028408 |
| JAXS8M004765 | STTN6M000225 | STTN8M000526 |

---

[5] Crowley respectfully requests that this Honorable Court take note of the fact that none of these Bills of Lading are even mentioned in the Verified Complaint/Underlying Suit. (Docket No. 1; Civil No. 18-01708 (ADC)).

8

| STTN5M000624 | STTN7M000393 | STTN8M000595 |
| STTN5M000625 | STTN8M000108 | STTN8M000596 |
| STTN5M000687 | STTN8M000182 | STTN8M000599 |
| STTN6M000106 | STTN8M000409 | STTN8M000600 |
| STTN8M000903 | STTN8M000968 | STTN8M001063 |

29. As agreed, Crowley made proper delivery of all containers subject to the above listed Bills of Lading.

30. However, codefendants failed to pick-up and return the containers within the free time allowed, consequently incurring in detention, demurrage and other related charges to the tune of $141,215.00, as of January, 2019.

31. During that time (on or about January 2019), Crowley attempted to collect the $141,215.00 outstanding charges (which continued to accrue daily) incurred by co-defendants in connection to the shipments object of the Bills of Lading listed in paragraph 28.

32. In response to Crowley's collection efforts, however, co-defendants incorrectly argued that those charges could not be collected insofar as they were released as part of the Settlement Agreement and Release entered in Civil No. 18-01708 (ADC).

33. As unequivocally cited in ¶ 18 above, said General Release clause contained in the Settlement Agreement, does not include the release of claims, demands, impositions, obligations, undertakings, controversies, actions, causes of action, damages, liabilities and all other matters whatsoever of whatever kind or nature, that were not object of the Underlying Suit.

34. Crowley has devoted significant amount of time and effort in discussing with codefendants that the outstanding charges were not released under the Settlement Agreement executed in the Underlying Suit.

35. Crowley has also devoted significant amount of time and effort in trying to collect the amounts due.

36. Unfortunately, all these efforts have been unsuccessful as codefendants have failed to pay the outstanding amounts, which up to August, 2019, amount to a total of $137,705.00, plus liquidated damages and interests.

37. Codefendants have also refused to accept that said charges were not released as part of the Settlement Agreement executed in the Underlying Suit.

## V. BREACH OF MARITIME CONTRACT

38. Crowley hereby incorporates and re-alleges the allegations set forth in paragraphs 1-37 as if fully set forth herein.

39. Codefendants entered into a maritime contract with Crowley for the ocean transportation of numerous containers under Bills of Lading Nos.:

| COSS8M212496 | STTN6M000107 | STTN8M000525 |
| --- | --- | --- |
| JAXS7M185659 | STTN6M000169 | JAXS8M028408 |
| JAXS8M004765 | STTN6M000225 | STTN8M000526 |
| STTN5M000624 | STTN7M000393 | STTN8M000595 |
| STTN5M000625 | STTN8M000108 | STTN8M000596 |
| STTN5M000687 | STTN8M000182 | STTN8M000599 |
| STTN6M000106 | STTN8M000409 | STTN8M000600 |
| STTN8M000903 | STTN8M000968 | STTN8M001063 |

40. Crowley shipped and carried the cargo to destination as agreed with proper notice of arrival issued.

41. In violation of the agreed upon terms and conditions that are included in the Service Contract, Bills of Lading, and Tariffs, codefendants failed to pick-up and return the containers within the time allowed.

42. Codefendants violations have caused the accrual of charges in the amount of $137,705.00, plus liquidated damages and interests. (up to August, 2019).

43. Further charges and interests continue to accrue until full payment is made.

44. Despite amicable demands for payment of the outstanding charges, codefendants have refused to pay.

45. As a result of codefendants breach of maritime contract, Crowley has suffered losses in a sum of no less than $137,705.00 (up to August, 2019) representing the outstanding charges.

46. An additional 25% must be included as liquidated damages as established under the Credit Agreement executed between the parties.

47. Accordingly, there is now due and owing to Crowley from codefendants the sum of no less than $137,705.00, which continues to increase every day until fully paid, plus liquidated damages, costs and expenses incurred in collecting all amounts due.

## VI.   DECLARATORY JUDGMENT

48. Crowley hereby incorporates and re-alleges the allegations set forth in paragraphs 1-47 as if fully set forth herein.

49. There is a genuine, bona fide and justiciable dispute and actual controversy regarding whether the charges that Crowley is attempting to collect in connection to the shipments object of the Bills of Lading listed at paragraphs 28 & 39 are released under the Settlement Agreement entered in the Underlying Suit (Civil No. 18-01708 (ADC)), or on the other hand, codefendants are responsible for the same and should be ordered to pay Crowley all amounts due.

50. Declaratory relief will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve said controversy.

51. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Crowley in the utmost good faith requests that this Honorable Court declare the following:

(i) That the outstanding charges related to the shipments made pursuant to the Bills of Lading listed at paragraphs 28 and 39 are not released under the Settlement Agreement entered in the Underlying Suit (Civil No. 18-01708 (ADC));

(ii) That co-defendants are responsible for payment of all outstanding charges related to the transportation of cargo under the Bills of Lading listed at paragraphs 28 and 39;

(iii) That co-defendants be ordered to pay the sum of $137,705.00 for charges incurred in connection to the shipments made pursuant to the Bills of Lading listed at paragraphs 28 and 39, plus liquidated damages and interests upon final payment;

(iv) That Crowley is entitled to recover all costs, expenses and attorneys' fees incurred in the filing of this Complaint for Declaratory Judgment and proceedings related thereto; and

(v) For such other and further relief this Honorable Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 10th day of October, 2019.

                    s/Jorge F. Blasini
                    **JORGE F. BLASINI**
                    USDC-PR # 213001

                    s/Juan Carlos Deliz
                    **JUAN CARLOS DELIZ**
                    USCD-PR # 224702

                    **JIMENEZ, GRAFFAM & LAUSELL**
                    PO BOX 366104
                    SAN JUAN, PR  00936-6104
                    TEL: (787) 767-1030
                    FAX: (787) 751-4068
                    jblasini@jgl.com
                    jcdeliz@jgl.com